UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KENNETH FELDER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:21-cv-00266-SEB-TAB |
| ) | |
| VERTEX MODERNIZATION AND ) | |
| SUSTAINMENT LLC, ) | |
| ) | |
| Defendant. ) | |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This cause is now before the Court on Defendant's Motion for Summary Judgment [Dkt. 85]. Plaintiff Kenneth Felder, proceeding *pro se*, brings this action against Defendant Vertex Modernization and Sustainment LLC ("Vertex"), alleging that Vertex's predecessor, Raytheon Company ("Raytheon"), denied him employment in April 2020 because of his age and race, in violation of the Age Discrimination in Employment Act ("ADEA") and Title VII of the Civil Rights Act of 1964 ("Title VII"), respectively, and that Vertex failed to hire him in January 2021 because of his race, in violation of Title VII, and his disability, in violation of the Americans With Disabilities Act, as amended ("ADA"). For the reasons detailed below, we <u>GRANT</u> Defendant's Motion for Summary Judgment.

1

## Factual Background

**April 2020 Job Offer and Withdrawal**

On April 2, 2020, Shaleen Gupta with Staffing Industry Analysts/ACS Group ("ACS Group"), a company that provides staffing and related services to its clients, contacted Mr. Felder about an Electronic Assembler position at Raytheon's Indianapolis facility. Two weeks later, on April 16, 2020, a Raytheon employee, Gene Dunlap, interviewed Mr. Felder for the position by telephone. Following the interview, Raytheon offered Mr. Felder a position through ACS Group that same day. In addition to Mr. Felder, Raytheon extended offers for the position of Electronic Assembler to nine other individuals as well.

Ms. Gupta called and emailed Mr. Felder to inform him of the offer and to solicit his acceptance. Ms. Gupta requested that Mr. Felder provide certain personal information required by Raytheon, including his full legal name, date of birth, mailing address, email, and available start date and told Mr. Felder that, once she received his acceptance, a drug test and background check would be conducted. Ms. Gupta also sent Mr. Felder a letter congratulating him on his "offer of employment with ACS Group." Exh. 3 to Felder Dep. at 44. The entire hiring process was completed over the telephone and through email communication. Mr. Felder never met anyone from Raytheon or ACS Group in person.

On April 20, 2020, Mr. Felder provided to Ms. Gupta the personal information she had requested on behalf of Raytheon, which information included his birth date. Later that same day, Ms. Gupta informed Mr. Felder that "Raytheon has rescinded this offer

due to lack of work." Felder Dep. at 30, Exh. 3 to Felder Dep. at 34, Exh. 5 to Felder Dep. According to Defendant, shortly after Raytheon had extended the job offer to Mr. Felder, Raytheon learned that the work it had hired Mr. Felder and the nine other individuals to perform at the Indianapolis facility was no longer going to be placed in Indianapolis or anywhere else in Indiana, so Raytheon was forced to withdraw all ten Electronic Assembler job offers, including the one extended to Mr. Felder.

**Fall 2020 EEOC Charge**

In the fall of 2020, Mr. Felder filed an EEOC charge, 480-2020-04182, against the ACS Group, stating:

> In April 2020, I was offered employment with Raytheon through Staffing Industry Analysts/ACS Group. Upon filling ou[t] pre-hire paperwork, I was asked to provide my date of birth. After supply[ing] my date of birth, Staffing Industry Analysts/ASC Group informed me that the job offer was cancelled. … In September 2020, I was contacted by Staffing Industry Analysts/ACS and informed that Raytheon was again hiring for the above referenced position. … To date, I have not been contacted for employment at Raytheon. I believe I was denied employment due to my age (62) and race (black)….

Exh. 8 to Felder Dep. On December 2, 2020, the EEOC issued a Dismissal and Notice of Rights on Mr. Felder's charge.

**January 2021 Job Interview**

In November and December 2020, Ms. Gupta corresponded with Mr. Felder about a different electronics assembler position at Raytheon. On January 8, 2021, Raytheon employees Cole Holland and Gale Monday interviewed Mr. Felder by telephone. They discussed the "job description and what the job entails, what kind of skills they were looking for in order to succeed at the job." Felder Dep. at 35. At the end of the

3

conversation, Mr. Holland asked Mr. Felder "if [he] had anything [he] wanted to add."

*Id.*  In response, Mr. Felder—

> explained to them—you know, at that time of the year, it was January, and that I have a condition—arthritic condition.  It's a disability I described to them and discussed.  Sometimes it impedes on my motor skills, and, you know, I move a little slowly at certain times when this arthritic condition has an effect on me.  And I explained to them that it doesn't entail any apparatuses or any devices or any use of a cane, wheelchair, walker or crutches.  It's just that I walk a little slow at times when the arthritis tends to flare up ….

*Id.* at 35–36.  Neither Mr. Holland nor Mr. Monday asked Mr. Felder any follow-up questions about his referenced disability, but in a post-interview communication, Mr. Holland noted that Mr. Felder's condition "shouldn't affect working @ a bench 9/hr/day." Exh. 7 to Felder Dep. at 2; Holland Decl. ¶ 10, Exh. B.

After completing interviews of all the candidates, Raytheon ultimately hired Shanetta Pickens, who is Black, and Alice Duarte, who is Hispanic, for the open Electronic Assembler positions.  Holland Decl. ¶¶ 11–12, Exh. A.  Mr. Felder did not receive a job offer from Raytheon.  Unlike Mr. Felder, both Ms. Pickens and Ms. Duarte had experience working on production schedules and working with engineers.  Additionally, Ms. Pickens had a military background and Ms. Duarte had experience with soldering and repairing drones, while Mr. Felder had no defense-related experience and had never worked under a defense contract.  Holland Decl. ¶ 9, ¶ 11; Exh. A and B to Holland Decl.

**Winter 2021 EEOC Charge**

On January 21, 2021, Mr. Felder filed an EEOC charge against Raytheon, which claimed in relevant part as follows:

4

> On or about January 8, 2021, I was interviewed for the second time by the Respondent for the position of Electronics Assembler. … During the interview, we discussed my experience, skills, and abilities which matched the open position. At the conclusion of the interview, I revealed that I was a qualified individual with a disability in case I may need a reasonable accommodation. I was not selected for the position.
>
> I believe that I have been discriminated against, due to my race, Black, … as well as my disability ….

Felder Dep. at 47, Exh. 10. On April 28, 2021, the EEOC issued a Dismissal and Notice of Rights. Felder Dep. at 49, Exh. 11.

**The Instant Lawsuit**

On February 2, 2021, Mr. Felder filed suit against Raytheon Human Resources Department and the ACS Group, *pro se*, alleging various discrimination and retaliation claims under Title VII, the ADEA, and the ADA. Following the Court's screening of Mr. Felder's original and amended complaints, Mr. Felder's claims against the ACS Group were dismissed with prejudice and his failure-to-hire race, age, and disability discrimination claims against Raytheon survived as the remaining claims to be litigated.

On February 23, 2022, Raytheon moved to substitute Vertex as the proper party defendant after Vertex acquired a portion of Raytheon's business that included operations in Indianapolis. That motion was granted on March 15, 2022 and Vertex was substituted as the defendant in this case. Now before us is Vertex's Motion for Summary Judgment. That motion is fully briefed and ripe for ruling.

<b><u>Legal Analysis</u></b>

**I.     Summary Judgment Standard**

Summary judgment is appropriate where there are no genuine disputes of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A court must grant a motion for summary judgment if it appears that no reasonable trier of fact could find in favor of the nonmovant on the basis of the designated admissible evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). We neither weigh the evidence nor evaluate the credibility of witnesses, *id.* at 255, but view the facts and the reasonable inferences flowing from them in the light most favorable to the nonmovant. *McConnell v. McKillip*, 573 F. Supp. 2d 1090, 1097 (S.D. Ind. 2008).

## II. Discussion

Mr. Felder alleges in this lawsuit that Raytheon's failures to hire him in April 2020 and again in January 2021 were each the result of unlawful discrimination. We address his arguments as to each employment action in turn below.

### A. April 2020 Failure to Hire

Mr. Felder claims that Raytheon's failure to hire him in April 2020 was because of his race and age, in violation of the Title VII and the ADEA, respectively. Defendant has moved for summary judgment on these claims based on Mr. Felder's failure to exhaust his administrative remedies by filing an EEOC charge against Raytheon before initiating this litigation.

Prior to suing an employer for discrimination under the ADEA or Title VII, an employee must first file a charge of discrimination with the EEOC. 29 U.S.C. § 626(d)(1) ("No civil action [under the ADEA] may be commenced by an individual …

until … after a charge alleging unlawful discrimination has been filed with the [EEOC]."); 42 U.S.C. § 2000e-5(e)(1) ("A charge under [Title VII] shall be filed … and notice of the charge … shall be served upon the person whom such charge is made within ten days thereafter ….").  The exhaustion requirement under the ADEA and Title VII is not jurisdictional; it is an affirmative defense.  *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393–94 (1982); *Stearns v. Consolidated Mgmt., Inc.*, 747 F.2d 1105, 1111 (7th Cir. 1984).  This rule "afford[s] an opportunity for the EEOC to settle the dispute between the employee and employer and put[s] the employer on notice of the charge against it."  *Harper v. Godfrey Co.*, 45 F.3d 143, 148 (7th Cir. 1995).

     Here, Mr. Felder filed an EEOC charge against the ACS Group with regard to his failure to be hired in April 2020, but neither identified Raytheon as a respondent nor alleged any wrongdoing by Raytheon in that charge.  Defendant argues that he thus failed to exhaust his administrative remedies before filing this lawsuit against Raytheon such that his claim cannot survive summary judgment.  Mr. Felder has not responded to this argument in his original response in opposition to the summary judgment motion and thus is considered to have waived any opposition.  *Strother v. Scott*, No. 1:20-cv-00063-SEB-MJD, 2021 WL 4477873, at *3 (S.D. Ind. Sept. 30, 2021) ("[A] party opposing summary judgment waives any argument that he does not raise in his brief in opposition to it.") (citations omitted); *see also Walton v. United States Steel Corp.*, 497 Fed. App'x 651, 655 (7th Cir. 2012) (holding *pro se* plaintiff waived arguments not raised in his response on summary judgment).  However, approximately three weeks after Defendant filed its reply brief in support of its motion for summary judgment, Mr. Felder filed an

"amended" response in which he argued for the first time that he did in fact file an EEOC charge in October 2020 against Raytheon alleging that the April 2020 non-hiring was discriminatory.

Even if his *pro se* status entitled him to leniency regarding the untimeliness of his filing,[1] Mr. Felder's belated contention does not save his employment discrimination claims against Raytheon because the EEOC charge he has attached to his amended response is not signed, dated, or notarized, nor is there any indication that it was in fact filed with or received by the EEOC, that Raytheon was otherwise provided notice of the charge, or that Raytheon was afforded an opportunity to participate in any EEOC proceedings.  *See Secrist v. Burns Int'l Sec. Servs.*, 926 F. Supp. 823, 825, 826 (E.D. Wis. Feb. 20, 1996) (recognizing that "[i]n general, a party not named as a respondent in an EEOC charge may not be sued in a Title VII or ADEA action" unless "the party … had adequate notice of the charge and an opportunity to participate in conciliation") (citations omitted).  Accordingly, because the record before us contains no admissible evidence establishing that Raytheon was ever named in a charge of discrimination addressing the April 2020 failure-to-hire filed with the EEOC prior to the initiation of this lawsuit or otherwise given notice of such a charge or an opportunity to participate in conciliation, Mr. Felder's ADEA and Title VII claims related to actions taken by Raytheon in April 2020 do not survive summary judgment.

---

[1] We note that Defendant has not moved to strike either Mr. Felder's amended response [Dkt. 99] or his second amended response [Dkt. 102] but has instead filed a reply to those amended responses [Dkt. 104].

### B. January 2021 Failure to Hire

Mr. Felder next alleges that Raytheon failed to hire him in January 2021 based on his race and disability, in violation of Title VII and the ADA, respectively. An analysis of these claims invokes the Seventh Circuit's decision in *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016), which states that regardless of whether the court uses the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) or some other framework to evaluate a plaintiff's employment discrimination claims, "the ultimate legal question 'is simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action.'" *Reed v. Freedom Mortg. Corp.*, 869 F.3d 543, 547 (7th Cir. 2017) (quoting *Ortiz*, 834 F.3d at 765). Under this "simplified" approach, the "[e]vidence must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself—or whether just the 'direct' evidence does so, or the 'indirect' evidence." *Ortiz*, 834 F.3d at 765.

Here, the evidence as a whole does not support any conclusion by a reasonable factfinder that Raytheon did not hire Mr. Felder in January 2021 because of a prohibited characteristic. The only argument Mr. Felder puts forth in support of his race and disability discrimination claims is that he was more qualified than the two women whom Raytheon ultimately hired for the position, such that the only possible explanation for his non-hiring is unlawful discrimination. In failure-to-hire cases such as this, the Seventh Circuit has held that where the employer's proffered non-discriminatory reason for its employment decision "is that it selected the most qualified candidate[s], evidence of the

9

applicants' competing qualifications does not constitute evidence of pretext unless those differences are so favorable to the plaintiff that there can be no dispute among reasonable persons of impartial judgment that the plaintiff was clearly better qualified for the position at issue." *Mlynczak v. Bodman*, 442 F.3d 1050, 1059 (7th Cir. 2006) (quoting *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1180 (7th Cir. 2002)).

      Mr. Felder's claims fall well short of this mark. Colburn Holland, who along with Gale Monday recommended that Raytheon hire Ms. Pickens and Ms. Duarte for the January 2021 Electronic Assembler openings, testified by affidavit that he believed Ms. Pickens and Ms. Duarte were the most qualified candidates for the position because, unlike Mr. Felder, they both had experience in production environments and in working with engineers, two qualifications relevant to the specific Electronic Assembler position Raytheon was filling. Additionally, Ms. Pickens had a military background and Ms. Duarte had experience with soldering and repairing drones; Mr. Felder, on the other hand, possessed no similar experience or background involving work in a defense contractor setting or repairing drones.

      In response, Mr. Felder cites the fact that none of the qualifications on which Raytheon contends it relied in hiring Ms. Pickens and Ms. Duarte were included in the job description for the Electronic Assembler position. Rather, the job description stated only that the position required experience reading diagrams, the ability to work from written and verbal instructions, knowledge of analog and digital electronics components, and adeptness with surface mounted or printed circuit board soldering techniques, which are all skills Mr. Felder claims he possesses and could perform with or without

accommodation. Based on this evidence, Mr. Felder argues that he should have been chosen over Ms. Pickens and Ms. Duarte for the Electronic Assembler position and that Raytheon's proffered reason for his non-hiring is not believable.

Contrary to Mr. Felder's contention, the fact that Raytheon relied on qualifications not required in the posted job description does not raise an inference of discrimination here. The evidence adduced by Defendant establishes that during the interview process Mr. Holland and Ms. Monday asked all candidates about their experience with production schedules, working with engineers, and working in a defense setting. Accordingly, while the job description did not list these qualifications as being required or even preferred, Mr. Holland's contemporaneous notes from the interviews are evidence that, at the time it made its hiring decisions, Raytheon considered such experience to be relevant to the position. There is no indication, therefore, that Raytheon's reliance on such qualifications is merely an after-the-fact justification concocted to hide a discriminatory motive. While Mr. Felder may not believe that such qualifications were necessary for the Electronic Assembler position, Raytheon was entitled to choose between qualified candidates and to prioritize whatever experience it believed would be helpful in the position so long as its reasons were not pretextual.

Mr. Felder also points to several exhibits as evidence of his superior qualifications, including his Associate of Applied Sciences degree; an updated resume, which differs from the resume he submitted to Raytheon; and the results of a public records search he performed using Ms. Pickens's name, which he contends shows that she does "not possess the skills the defendant placed in the employment ad[]." Dkt. 95 at 1. Even

11

assuming that these exhibits constitute properly authenticated and admissible evidence, they are irrelevant because there has been no showing that any of this information was presented to or considered by Raytheon at the time it hired Ms. Pickens and Ms. Duarte over Mr. Felder; thus, none of the information could possibly have impacted Raytheon's hiring decision. *Pierce v. Fort Wayne Healthcare Grp., LLC*, No. 1:16-cv-426-TLS, 2018 WL 2220287, at *6 (N.D. Ind. May 15, 2018) (recognizing that a decisionmaker cannot rely on information they did not have at the time the decision was made).

While it is clear that Mr. Felder believes he was the best qualified candidate for the Electronics Assembler position, an employee's "own opinions about [his] … qualifications do not give rise to a material factual dispute." *Robertson v. Dep't of Health Servs.*, 949 F.3d 371, 381 (7th Cir. 2020) (quoting *Rabinovitz v. Pena*, 89 F.3d 482, 487 (7th Cir. 1996)).  For the reasons previously detailed, we find that Mr. Felder has failed to point to any "weaknesses, implausibilities, inconsistencies, or contradictions" in Raytheon's stated reasons for selecting Ms. Pickens and Ms. Duarte for the Electronic Assembler position over him such "that a reasonable person could find [them] unworthy of credence." *Harper v. C.R. England, Inc.*, 687 F.3d 297, 311 (7th Cir. 2012).  Under such circumstances, an employer is permitted to "make a calculated business decision by weighing the relative merits and deficiencies of [the] candidates," *Dunn v. Nordstrom, Inc.*, 260 F.3d 778, 787 (7th Cir. 2001), and the court "must respect the employer's unfettered discretion to choose among qualified candidates." *Millbrook*, 280 F.3d at 1181 (citation omitted).

### III.  Conclusion

For the reasons detailed above, Defendant's Motion for Summary Judgment is <u>GRANTED</u>.  Final judgment shall be entered accordingly.

IT IS SO ORDERED.

Date:  6/2/2023

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

KENNETH FELDER
3818 Carey St.
East Chicago, IN 46312

Kenneth B. Siepman
Ogletree Deakins
kenneth.siepman@ogletreedeakins.com

Kate Elizabeth Trinkle
Ogletree Deakins
kate.trinkle@ogletreedeakins.com